Filed 11/25/24 Benhaghnazar v. Shapiro CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DANYEL BENHAGHNAZAR et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> JONATHAN SHAPIRO, etc., et al., <br><br> Defendants and Appellants. | B326591 <br><br> (Los Angeles County <br> Super. Ct. No. 22STCV13292) |

APPEAL from an order of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge. Reversed.

LeBeau-Thelen and Andrew K. Sheffield for Defendants and Appellants.

The Siman Law Firm and Afshin Siman for Plaintiffs and Respondents.

_____

After obtaining dismissal of an unlawful detainer complaint against them, plaintiffs and respondents Danyel Benhaghnazar and Stella Yaghouzbzadeh (tenants) sued their landlords, defendants and appellants Jonathan and Helene Shapiro (landlords) under Los Angeles Municipal Code (LAMC) section 49.99.7.  That provision grants tenants a private right of action against landlords attempting to evict them in violation of tenant protections enacted during the COVID-19 pandemic, specifically the protections of LAMC section 49.99.2.

Landlords filed a special motion to strike tenants' complaint under Code of Civil Procedure section 425.16, the anti-SLAPP statute.  The trial court found landlords conduct in seeking to evict tenants was protected under the statute, but tenants satisfied their burden to show their case had minimal merit.  The trial court denied the anti-SLAPP motion, leading to the instant appeal by landlords.

Landlords raise several arguments on appeal.  We find one argument dispositive in their favor:  Tenants did not serve proper prelitigation notice on landlords as required under LAMC section 49.99.7.

Tenants argue, and the trial court found, that tenants' motion for judgment on the pleadings in the unlawful detainer action, which identified landlords' purported violations of LAMC section 49.99.2 and noted tenants had a right of action under LAMC section 49.99.7, satisfied the prelitigation notice requirement.

We disagree.  To avoid confusion and fulfill the purpose of prelitigation notice and safe harbor, the notice must identify the violations and convey to the landlord that if the landlord does not cure the violations within the deadline defined in the statute, the

2

tenant will sue the landlord under LAMC section 49.99.7. These bright lines are important lest the statute generate a flood of litigation as to whether some pleading was sufficiently clear to constitute the required statutory prelitigation notice. This would upend the very purpose of prelitigation notice and a safe harbor, that is, to conserve judicial and litigant resources.

Tenants' motion for judgment on the pleadings does not meet this test. The motion was directed to the court, not to landlords. It did not set forth any consequence if the landlords did not withdraw the unlawful detainer action and certainly no deadline for doing so. To the contrary, it informed landlords, incorrectly, that the tenants could sue them immediately.

Accordingly, we reverse.

## BACKGROUND

### 1.  *Landlords' unlawful detainer action*

In 2016, landlords leased a residence on Kirkside Road in Los Angeles to tenants for $10,500 per month, increased to $11,000 for 2020 through January 2021.

On January 11, 2021, landlords served tenants with a 15-day notice to pay rent or quit the premises (notice to quit). The notice indicated tenants owed $55,000 in unpaid rent for September 2020 through January 2021.

On February 16, 2021, landlords filed an unlawful detainer complaint against tenants. (Los Angeles Superior Court Case No. 21STCV05714.) On April 26, 2021, tenants filed a motion for judgment on the pleadings. They argued they were shielded from eviction by LAMC article 14.6, section 49.99 et seq., which provided certain protections to renters during the COVID-19

3

emergency. We describe tenants' motion in more detail in our Discussion, *post*.

The unlawful detainer court granted the motion for judgment on the pleadings, finding landlords' notice to quit was defective under LAMC article 14.6. Specifically, landlords' notice did not include a "Protections Notice" informing tenants of their rights under LAMC article 14.6, as required under LAMC section 49.99.2, former subdivision (E). The court dismissed the unlawful detainer complaint on July 15, 2021.

## 2. *Tenants' complaint and anti-SLAPP motion*

On April 21, 2022, tenants filed a lawsuit against landlords alleging a single cause of action for violation of LAMC section 49.99 et seq. Tenants alleged landlords had violated LAMC section 49.99.2 by 1) "endeavor[ing] to evict [tenants], followed by [landlords'] subsequent civil lawsuit"; and 2) "by not providing [tenants] with the Protections Notice" along with the notice to quit. Tenants prayed for, inter alia, general, special, and punitive damages as well as civil penalties.

Landlords filed an anti-SLAPP motion. They argued their unlawful detainer action was protected activity, and their notice to quit also was protected as a communication preparatory to, and made in anticipation of bringing the unlawful detainer action. They argued tenants could not prevail on their complaint because 1) landlords' notice to quit and unlawful detainer complaint were shielded by the litigation privilege; 2) tenants' cause of action was subject to a one-year statute of limitations that had expired; and 3) tenants had failed to provide landlords with the prelitigation notice required under LAMC section 49.99.7.

4

Tenants opposed the motion, arguing landlords' attempt to evict them was illegal and therefore unprotected by the anti-SLAPP statute. As to the merits of their complaint, tenants argued landlords' violations were clear on the face of the Los Angeles Municipal Code, and were further supported by the unlawful detainer judgment in tenants' favor. They argued their cause of action did not accrue until the unlawful detainer court ruled in their favor, and therefore their complaint was timely. Finally, they argued their motion for judgment on the pleadings in the unlawful detainer action adequately notified landlords of the violation of LAMC section 49.99.2, thus satisfying the prenotice requirements of LAMC section 49.99.7.[1]

Tenants attached to their opposition the unlawful detainer court's ruling in their favor, and an excerpt of the memorandum of points and authorities in support of their motion for judgment on the pleadings discussing LAMC article 14.6.

In reply, landlords contended their alleged conduct was protected despite tenants' claims of illegality because tenants had not shown landlords' conduct was illegal as a matter of law. They further argued the litigation privilege, a provision of state law, preempts LAMC article 14.6 to the extent the municipal code imposed liability based on landlords' service of the notice to quit and filing of the unlawful detainer action. They contended tenants' cause of action had accrued when landlords served the notice to quit in January 2021 and filed their unlawful detainer action in February 2021, and therefore was untimely under the

---

[1] Tenants also argued the anti-SLAPP motion was untimely. The trial court found to the contrary, and tenants raise no issue of timeliness in their appellate briefing. We therefore do not address the issue.

5

one-year statute of limitations. They disputed that tenants' motion for judgment on the pleadings satisfied the prelitigation notice requirement under LAMC section 49.99.7 because the motion was not "a separate written notice identifying the violations and providing a 15-day time period to cure."

### 3.    *Trial court's ruling*

The trial court found landlords had met their burden to show their conduct was protected under the anti-SLAPP statute. The notice to quit was a communication in anticipation of or as part of a judicial proceeding, and the unlawful detainer action itself was an exercise of landlords' protected right of petition. The court rejected tenants' argument that their allegations of illegality negated landlords' anti-SLAPP protection.

The trial court further found that tenants had shown a probability of prevailing on their complaint. The court ruled that LAMC sections 49.99.2 and 49.99.7 "created an exception" to the otherwise-applicable litigation privilege.

The court noted tenants had not contested that their cause of action was subject to a one-year statute of limitations, but the court found tenants' cause of action did not accrue until the unlawful detainer complaint was dismissed. The court stated, "If [tenants] lost the unlawful detainer case, there would have been no cause of action at all. It was only when they won the unlawful detainer case that they had a cause of action for violation of LAMC sec. 49.99.2."

The court concluded tenants' motion for judgment on the pleadings in the unlawful detainer action satisfied LAMC section 49.99.7's prelitigation notice requirement, because that motion "indisputably gave notice to [landlords] of their violation of LAMC sec. 49.99.2" and landlords "did not 'cure' their violation

6

within 15 days of the filing of the motion.  Rather, they opposed the motion, and unsuccessfully at that."

Finally, the court noted the unlawful detainer court had ruled in tenants' favor, indicating a likelihood they would succeed on their own complaint.

Accordingly, the trial court denied the anti-SLAPP motion. Landlords timely appealed.

## DISCUSSION

### A.    Los Angeles Municipal Code Article 14.6

Los Angeles added LAMC article 14.6, sections 49.99 et seq. to the municipal code in March 2020 "to temporarily prohibit certain residential and commercial evictions due to the COVID-19 pandemic."  (Los Angeles Ordinance No. 186585.)  The city amended the article in full in May 2020.  (See Los Angeles Ordinance No. 186606.)  The May 2020 version is the version applicable to this case.

In January 2023, the city further amended LAMC article 14.6.  (Los Angeles Ordinance No. 187736.)  Citations in this opinion to "former" provisions of LAMC article 14.6 are to the May 2020 version to the extent those provisions differ from the current version of the article.[2]

---

[2] As relevant here, the January 2023 amendments repealed LAMC section 49.99.2, subdivision (E), which required landlords to provide the Protections Notice to their tenants. (Los Angeles Ordinance No. 187736, § 5.)  The amendments also set January 31, 2023 as the end date for the tenant protections under LAMC section 49.99.2, subdivision (A).  (Los Angeles Ordinance No. 187736, § 2.)

7

LAMC section 49.99.2, former subdivision (A) provides, in relevant part, "During the Local Emergency Period and for 12 months after its expiration, no Owner shall endeavor to evict or evict a residential tenant for non-payment of rent during the Local Emergency Period if the tenant is unable to pay rent due to circumstances related to the COVID-19 pandemic."

The article defines "endeavor to evict" as "conduct where the Owner [e.g., landlord] lacks a good faith basis to believe that the tenant does not enjoy the benefits of this article and the Owner serves or provides in any way to the tenant:  a notice to pay or quit, a notice to perform covenant or quit, a notice of termination, or any other eviction notice."  (LAMC, § 49.99.1, subd. (B).)  "Local Emergency Period" is defined as "the period of time from March 4, 2020, to the end of the local emergency as declared by the Mayor."  (*Id.*, subd. (C).)

LAMC section 49.99.2, former subdivision (E) requires landlords to "(i) provide written notice to each residential tenant of the protections afforded by this article ('Protections Notice') within 15 days of the effective date of this ordinance; and (ii) provide the Protections Notice during the Local Emergency Period and for 12 months after its termination each time the [landlord] serves a notice to pay or quit . . . ."  The subdivision states that the city "shall make available the form of the Protections Notice, which must be used, without modification of content or format, by the [landlord] to comply with this subparagraph."  (LAMC, § 49.99.2, former subd. (E).)

LAMC section 49.99.7, entitled "Private Right of Action for Residential Tenants," provides, "If an Owner violates Section 49.99.2, except for 49.99.2(E)(i), an aggrieved residential tenant may institute a civil proceeding for injunctive relief, direct money

8

damages, and any other relief the Court deems appropriate, including, at the discretion of the Court, an award of a civil penalty up to $10,000 per violation depending on the severity of the violation." (Boldface & some capitalization omitted.)

LAMC section 49.99.7 requires the tenant to provide notice to the landlord before initiating a proceeding under that provision: "A civil proceeding by a residential tenant under this section shall commence only after the tenant provides written notice to the Owner of the alleged violation, and the Owner is provided 15 days from the receipt of the notice to cure the alleged violation." (LAMC, § 49.99.7.)

## B.     The Anti-SLAPP Statute

"[T]he anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' (§ 425.16, subd. (b)(1).)" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884.)

Acts protected under the statute include, inter alia, "any written or oral statement or writing made before a . . . judicial proceeding," "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body," and "any other conduct in furtherance of the exercise of the constitutional right of petition . . . ." (Code Civ. Proc., § 425.16, subd. (e)(1), (2), (4).)

"A court evaluates an anti-SLAPP motion in two steps. 'Initially, the moving defendant bears the burden of establishing

9

that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.  [Citations.]  If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least "minimal merit." ' [Citation.]  If the plaintiff fails to meet that burden, the court will strike the claim."  (*Wilson v. Cable News Network, Inc.*, *supra*, 7 Cal.5th at p. 884.)

The second step of anti-SLAPP analysis involves "a 'summary-judgment-like procedure,' " in which "[t]he court does not weigh evidence or resolve conflicting factual claims.  Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment.  It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.  [Citation.]  '[C]laims with the requisite minimal merit may proceed.' [Citation.]"  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384–385.)

"We review de novo the grant or denial of an anti-SLAPP motion."  (*Sanchez v. Bezos* (2022) 80 Cal.App.5th 750, 763.)  "We therefore engage in the same two-step process that the trial court undertakes in assessing an anti-SLAPP motion."  (*Billauer v. Escobar-Eck* (2023) 88 Cal.App.5th 953, 962.)

## C.    The Trial Court Erred In Not Striking Tenants' Complaint

We conclude tenants' complaint implicates conduct protected under the anti-SLAPP statute.  We further conclude tenants have not shown their lawsuit has minimal merit.  The trial court should have granted landlords' special motion to strike.

10

### 1. Tenants' complaint arises from protected conduct

At the first step of anti-SLAPP analysis, the trial court found tenants' complaint arose from protected conduct and landlords therefore satisfied their burden at that step. Tenants do not argue otherwise in their respondents' brief in this appeal.

We agree with the trial court. "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062.) "Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.' [Citations.]" (*Id.* at p. 1063.) "[I]n ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Ibid.*) If "specific elements" of a plaintiff's claims "depend[ ] upon the defendant's protected activity," those claims arise from that protected activity. (See *id.* at p. 1064.)

Tenants' lawsuit is based on three alleged acts or failures to act by landlords in violation of LAMC section 49.99.2. First, landlords "endeavor[ed] to evict [tenants]" during the COVID-19 emergency. As noted, for purposes of LAMC section 49.99.2, a landlord "endeavor[s] to evict" by, inter alia, "serv[ing] . . . to the tenant . . . a notice to pay or quit." (LAMC, § 49.99.1, subd. (B).) Second, landlords filed their "subsequent civil lawsuit," i.e., the unlawful detainer action. Third, landlords did not "provid[e] [tenants] with the Protections Notice" along with the notice to quit.

11

All three alleged acts or failures to act are protected under the anti-SLAPP statute. "The prosecution of an unlawful detainer action indisputably is protected activity within the meaning of [Code of Civil Procedure] section 425.16." (*Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281; see *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 19 ["The constitutional right to petition . . . includes the basic act of filing litigation"].)

Further, "if the termination notice is a legal prerequisite for bringing an unlawful detainer action, . . . service of such a notice . . . constitute[s] activity in furtherance of the constitutionally protected right to petition." (*Birkner v. Lam*, *supra*, 156 Cal.App.4th at p. 282; *Winslett v. 1811 27th Avenue LLC* (2018) 26 Cal.App.5th 239, 248 ["service of a notice of termination preceding an unlawful detainer complaint" "is anti-SLAPP protected activity"].) Tenants have not disputed below or on appeal that landlords' service of the notice to quit was a legal prerequisite to the unlawful detainer action.

The protections notice under LAMC section 49.99.2, subdivision (E) also is a legal prerequisite to an unlawful detainer action, because it is a required component of the notice to quit under the municipal code. By seeking to impose liability on landlords for failing to provide the protections notice, tenants effectively are suing for service of an improper notice to quit. Suits arising from notices to quit preceding unlawful detainer actions implicate protected conduct, and thus tenants' allegation that landlords served *improper* notice arises from protected conduct.

We recognize " 'the mere fact an action was filed after protected activity took place does not mean it arose from that activity.' [Citation.]" (*Ulkarim v. Westfield LLC* (2014)

12

227 Cal.App.4th 1266, 1275.)  Applying this principle, courts "distinguish a cause of action based on the service of a notice in connection with the termination of a tenancy or filing of an unlawful detainer complaint from a cause of action based on the decision to terminate or other conduct in connection with the termination."  (*Id*. at p. 1276.)  Thus, "a tenant's complaint against a landlord filed after the service of a notice of termination and the filing of a complaint for unlawful detainer does not arise from those particular activities if the gravamen of the tenant's complaint challenges the decision to terminate the tenancy or other conduct in connection with the termination apart from the service of a notice of termination or filing of an unlawful detainer complaint."  (*Id*. at p. 1279.)  In other words, if a tenant is suing for wrongful eviction, that is, a decision by the landlord to evict without proper cause, the fact the landlord carried out that decision through the protected conduct of a notice to quit and unlawful detainer action does not necessarily bring the action within the anti-SLAPP statute.

Here, however, tenants are suing landlords for "endeavor[ing] to evict" them in violation of LAMC section 49.99.2, subdivision (A), an act expressly defined as serving a notice to pay or quit or similar eviction notice.  (LAMC, § 49.99.1, subd. (B).)  Thus, service of the notice to quit is an element of tenants' cause of action.  The cause of action arises from protected conduct.

13

### 2. Tenants did not comply with the municipal code's prelitigation notice requirements and therefore have not shown their lawsuit has minimal merit

On appeal, landlords raise four arguments as to why tenants' lawsuit lacks minimal merit: First, tenants have not proffered admissible evidence that landlords violated LAMC section 49.99.2; second, tenants did not comply with the prelitigation notice requirement of LAMC section 49.99.7 before filing their complaint; third, the litigation privilege under Civil Code section 47, subdivision (b) preempts LAMC section 49.99.7 to the extent it imposes liability for initiating and prosecuting an unlawful detainer action; and fourth, tenants' cause of action is time barred under the applicable statute of limitations. We agree with landlords' second argument regarding lack of prelitigation notice and thus do not reach landlords' other arguments.

As noted, LAMC section 49.99.7 provides, "A civil proceeding by a residential tenant under this section shall commence only after the tenant provides written notice to the Owner of the alleged violation, and the Owner is provided 15 days from the receipt of the notice to cure the alleged violation." (LAMC, § 49.99.7.)

Tenants argue, as they did below, that they satisfied this notice requirement by filing and serving their motion for judgment on the pleadings in the unlawful detainer action, which motion was based on landlords' failure to comply with LAMC section 49.99.2.[3] The notice of motion and the motion itself

---

[3] Although tenants attached only excerpts of their memorandum of points and authorities in support of the motion

14

do not refer to any provision of LAMC article 14.6.  In the supporting memorandum of points and authorities, however, tenants outlined the history of LAMC article 14.6, summarized LAMC section 49.99.2's limitations on evictions based on inability to pay rent due to circumstances related to the pandemic, and argued tenants' nonpayment of rent fell within the timeframe described in LAMC article 14.6.

In their memorandum tenants further contended landlords violated LAMC section 49.99.2, former subdivision (E)(ii) by not providing the protections notice along with the notice to quit. The memorandum asserted, "As the result of the efforts of [landlords] to evict during this period of prohibition . . . and/or for failing to serve [tenants] with proper notice, [tenants] have a right of action for civil penalties in the amount of at least . . . $20,000.00 or $10,000.00 per violation."  The memorandum then cited LAMC section 49.99.7.

---

for judgment on the pleadings to their opposition to landlords' anti-SLAPP motion, at tenants' request, the trial court took judicial notice of the entire record of the unlawful detainer proceeding, which includes the complete motion for judgment on the pleadings and supporting memorandum.  Landlords objected below to taking such judicial notice, but do not reassert this challenge on appeal, thus waiving any challenge to the trial court's grant of judicial notice.  (See *Osornio v. Weingarten* (2004) 124 Cal.App.4th 304, 316, fn. 7 [contention raised below but not advanced on appeal waived].)  On our own motion we also take judicial notice of the record in the unlawful detainer action, including the entirety of tenants' motion for judgment on the pleadings and supporting memorandum.  (Evid. Code, § 459, subd. (a) ["reviewing court shall take judicial notice of . . . each matter properly noticed by the trial court"].)

15

We disagree tenants' motion for judgment on the pleadings, including its supporting memorandum, satisfied the prelitigation notice requirement under LAMC section 49.99.7. This legally mandated notice must, at minimum, inform the landlord that the landlord's efforts to evict violate LAMC section 49.99.2, and that if the landlord does not cease those efforts within 15 days, then the tenant will seek remedies under LAMC section 49.99.7. The tenants' memorandum of points and authorities in support of their motion for judgment of the pleadings did not provide that prelitigation notice.

Tenants' motion was directed to the court, not to landlords, and its goal was not to request landlords to cure the alleged violations, but instead, to obtain a judgment on the pleadings from the court. Indeed, far from requesting landlords cure any violations, tenants' motion indicated—incorrectly given they had yet to serve prelitigation notice—that tenants "have a right of action for civil penalties" under LAMC section 49.99.7. Landlords could not reasonably be expected to infer from the motion that tenants were seeking curative action from landlords and granting landlords 15 days safe harbor. If anything, tenants' incorrect statement that they "have a right of action" suggests they could bring that action even if landlords attempted to cure by dismissing the unlawful detainer complaint.

Tenants argue that LAMC section 49.99.7 contains "no requirements concerning the substance of the notice, the means of delivery, or any other particularized mandate that cannot be achieved through the filing of the judgment on the pleadings in the underlying litigation." Tenants contend their only duty under the ordinance "is to provide written notice of the violation and then wait before commencing a lawsuit."

16

Tenants' broad reading of what is acceptable under LAMC section 49.99.7 is not consistent with the purposes of a prelitigation notice and a safe harbor provision. The purpose of such a provision is to conserve judicial and litigant resources by conditioning additional litigation upon giving the putative defendant an opportunity to cure the purported illegal conduct by a certain deadline.

Bright lines are important too. Tenants' reading reduces what should be a clear rule to an amorphous one, wherein any writing referencing violations of LAMC section 49.99.2, however presented, would constitute adequate notice. Tenants' concept of prelitigation notice would produce unnecessary litigation as to whether a particular writing sufficiently apprised the landlord of the alleged wrongdoing and opportunity to cure. Tenants' reading further would encourage gamesmanship, in which a tenant provides a bare minimum of information in inconspicuous form in hopes the defendant will overlook the purported notice and fail to cure—all in an effort to give the tenant the go-ahead to sue and seek penalties. This is obviously inconsistent with the intent of the notice and safe harbor requirements of LAMC section 49.99.7 to avoid litigation.

The tenants' motion and memorandum were too unclear to give the requisite notice under LAMC section 49.99, and all the more obfuscated by the ostensible purpose of these documents to obtain judgment on the pleadings from the court rather than provide prelitigation notice. Further, tenants' incorrect assertion in their memorandum that they already had a cause of action against landlords was contrary to the safe harbor provisions of LAMC section 49.99.7. The motion and memorandum therefore

17

did not fulfill the purpose of prelitigation notice under LAMC section 49.99.7.

Tenants argue, "The concept of substantial compliance recognizes that strict adherence to the formality of notice requirements may be flexible when the fundamental purpose of notice has been achieved." They ask us to "[s]ee generally" *Hanf v. Sunnyview Development, Inc.* (1982) 128 Cal.App.3d 909, 914 (*Hanf*), *Cory v. Crocker National Bank* (1981) 123 Cal.App.3d 665, 669 (*Cory*), and *Camp v. Board of Supervisors* (1981) 123 Cal.App.3d 334, 348 (*Camp*). Tenants do not quote any language from these cases, discuss their facts, or analogize them to the facts of the instant case. Our review of the cases, however, reveals nothing that undercuts our reasoning.

In *Hanf*, the appellants filed a " 'Rejection of Arbitrator's Award' " with the trial court stating the appellants " 'hereby reject the Arbitrator's Award made herein.' " (*Hanf*, *supra*, 128 Cal.App.3d at p. 911.) Twelve days later, the appellants filed a request for a trial de novo. (*Ibid.*) The trial request was untimely under the California Rules of Court. (*Id.* at p. 913.) The Court of Appeal concluded, however, that the " 'Rejection of Arbitrator's Award' sufficiently alerted both the trial court and respondents to appellants' election . . . to take the case to trial. It was promptly filed and its intent was clear." (*Id.* at p. 916.) The court therefore found the appellants had substantially complied with the Rules of Court. (*Ibid.*)

It is not clear to us why the *Hanf* court concluded a document rejecting an arbitration award was sufficient to indicate the appellants would be seeking a trial de novo—the opinion does not discuss the substance of the document rejecting the arbitration award in any detail, instead stating, without

18

specifics, that the notice "in substance, promptly and adequately inform[ed] both the court and any adverse party of the intent to elect a trial de novo." (*Hanf*, *supra*, 128 Cal.App.3d at p. 916.) It is thus difficult to draw any meaningful analogy to the facts of the instant case, and, as noted, tenants make no attempt to do so in their briefing. We also observe that nothing in *Hanf* suggests the rejection notice there was misleading, which distinguishes it from this case, in which the motion for judgment on the pleadings suggested tenants had an immediate cause of action despite not having yet served a prelitigation notice or allowed landlords the safe harbor period.

*Cory* concerned whether a summons served on a corporate officer, Brewer, satisfied the requirements for service on a corporation, Crocker National Bank (Crocker). (See *supra*, 123 Cal.App.3d at p. 670.) Although Crocker, not Brewer, was listed as the defendant on the caption of the form summons, the checkbox indicating service was to Brewer on behalf of the corporation was not checked, and Crocker's name was not listed on the line next to the checkbox. (*Id.* at p. 667.)

The Court of Appeal held the summons substantially complied with the Code of Civil Procedure's requirements for serving summons on a corporate defendant. (*Crocker*, *supra*, 123 Cal.App.3d at p. 670.) The summons itself indicated service was made under a provision of the Code of Civil Procedure governing service on a corporation, the only corporation named in the complaint and summons was Crocker, and the stamp on the summons indicated Brewer had accepted service as a representative of Crocker. (*Ibid.*) Thus, "Brewer could not, and was not, misled or confused as to the capacity in which he was served," and "appellant's failure to explicitly designate the name

19

of the corporation in the space provided . . . amounted to no more than inconsequential omission which does not and cannot abrogate the existence of substantial compliance with the statute." (*Id.* at pp. 670–671.)

The instant case does not involve inconsequential, technical omissions on a form that otherwise clearly conveyed the necessary information to the defendant and its representative. Rather, tenants ask us to construe a document intended for one purpose—obtaining judgment on the pleadings in one lawsuit—as serving an entirely different purpose—prelitigation notice of another lawsuit. For the reasons already discussed, tenants' motion certainly could have "misled or confused" (*Cory, supra,* 123 Cal.App.3d at p. 670) landlords as to whether the tenants intended their motion as prelitigation notice initiating a safe harbor period.

*Camp* held the trial court properly concluded three elements of a county's general plan did *not* substantially comply with statutory requirements. (*Supra,* 123 Cal.App.3d at pp. 348–352.) The case articulates the standard for substantial compliance: " 'Substantial compliance, as the phrase is used in the decisions, means *actual* compliance in respect to the substance essential to every reasonable objective of the statute,' as distinguished from 'mere technical imperfections of form.' [Citations.]" (*Id.* at p. 348.) Apart from this general statement, we fail to see how this case is relevant or helps tenants. As discussed, tenants' motion for judgment on the pleadings did not comply with " 'the substance essential to every reasonable objective" of LAMC section 49.99.7 (*Camp*, at p. 348), and therefore cannot constitute substantial compliance with that provision.

20

Because tenants did not comply with the prelitigation notice requirement of LAMC section 49.99.7, they cannot satisfy the elements of a cause of action under that provision.  They therefore fail to meet their burden at the second step of anti-SLAPP analysis.

## DISPOSITION

The order denying the special motion to strike is reversed. The trial court is instructed to enter an order granting the motion.  Appellants are awarded their costs on appeal.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

KLATCHKO, J.*

---

*  Judge of the Riverside County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.